IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GIANT SCREEN SPORTS LLC, et al.    )
                                          )
                Plaintiffs,   )
                                         )
v.                          )     No. 05 C 7184
                                         )
SKY HIGH ENTERTAINMENT, et al.   )
                                         )
                Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Canadian Imperial Bank of Commerce's ("CIBC") partial motion to dismiss Counts VIII and IX. For the reasons stated below, we deny CIBC's partial motion to dismiss Counts VIII and IX.

## BACKGROUND

In October 2001, Sky High Entertainment ("Sky High") allegedly entered into a contract ("Films Contract") with Plaintiff Giant Screen Sports LLC ("Giant Screen Films") under which Giant Screen Films was retained to distribute two films produced by Sky High entitled "Ultimate Gs" and "Adrenaline Rush" (collectively referred to as "Films"). According to Giant Screen Films Vikings LLC ("Giant

1

Screen Vikings") and Giant Screen Films (collectively referred to as "Giant Screen"), under the Films Contract, Giant Screen Films was to be the exclusive distributor of the Films. In November 2002, Sky High allegedly entered into a contract ("Viking Contract") with Giant Screen Vikings under which Giant Screen Vikings was retained to distribute a film entitled "Vikings" ("Vikings Film").

Giant Screen contends that after the Vikings contract was executed, Defendant Carl Samson ("Samson") falsified the terms of the Vikings Contract and forged a signature of a Giant Screen representative on the Vikings Contract so that Samson could obtain a loan from CIBC. According to Giant Screen, based upon the false information in the Vikings Contract, CIBC entered into a credit agreement ("Credit Agreement") under which it agreed to advance a loan to Sky High of approximately $2.7 Million to finance the production of the Vikings Film. As part of the Credit Agreement, Sky High was allegedly required to enter into a Notice of Security, Direction of Payment and Distributor Acceptance ("Security Notice") and Giant Screen Films guaranteed Giant Screen Vikings' payment of $3 million to CIBC. In addition, as part of the Credit Agreement, Sky High entered into multi-party Pledgeholder Agreements ("Pledgeholder Agreements"). Giant Screen contends that Samson and Sky High failed to disclose the alterations to the terms of the Vikings Contract or the dealings between Sky High and CIBC.

Giant Screen contends that it has fulfilled its obligations under the Films Contract and Vikings Contract by securing leases for the Films and the Vikings Film. However, Giant Screen claims that Sky High has refused to pay the amounts owed to

Giant Screen under the Films Contract and Vikings Contract. Giant Screen also claims that in October 2004, CIBC contacted Giant Screen and demanded payments pursuant to the Security Notice and Giant Screen claims to have realized at that time the alleged fraud perpetrated by Samson and Sky High. Giant Screen also claims that when CIBC requested funds from Giant Screen, CIBC made false statements about Giant Screen's breach of its contractual obligations under the Security Notice. According to Giant Screen, in April 2005, it received a letter from CIBC indicating that it had entered into a settlement with Sky High.

Giant Screen also claims that in the Spring of 2005, Sky High was promoting a film entitled "Dinosaurs 3D" and that Sky High undermined Giant Screen's effort to distribute the Films by entering into various distribution agreements and linking promotion and distribution of the Films to "Dinosaurs 3D." Giant Screen also claims that in the Summer of 2005, Sky High undermined Giant Screen's ability to distribute the Films by offering to distribute "Adrenaline Rush" for free to numerous theaters. Finally, Giant Screen claims that Samson and Sky High told large-format theaters, post production vendors, and others in the industry that Giant Screen was no longer distributing the Films, that the contracts were being terminated, and that the theaters and vendors should stop sending payments to Giant Screen and should cease communications with Giant Screen.

Giant Screen brought the instant action and includes in its second amended complaint a breach of contract claim against Sky High (Count I), a fraud claim against Sky High and Samson (Count II), a breach of the implied covenant of good

faith and fair dealing claim against Sky High and Samson (Count III), an unjust enrichment claim against Sky High and Samson (Count IV), a quantum meruit claim against Sky High and Samson (Count V), a tortious interference with prospective business relations claim against Sky High and Samson (Count VI), a civil conspiracy claim against Sky High and Samson (Count VII), a defamation claim against CIBC (Count VIII), a tortious interference with prospective business relations claim against CIBC (Count IX), a declaratory judgment claim against Sky High and Samson (Count X), and a declaratory judgment claim against CIBC (Count XI). CIBC now moves for dismissal of Counts VIII and IX.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail [the court could not] say at [that] early

4

stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimum notice of claim," *id.*, and the plaintiff cannot satisfy federal the pleading requirement merely "by attaching bare legal conclusions to narrated facts which fail to outline bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

I. Defamation Claim (Count VIII)

    A. Clear Defamatory Statement

5

CIBC contends that Giant Screen "fail[ed] to allege a defamatory statement clearly and [Count VIII] should be dismissed." (Mot. 5). Under Illinois law, a statement is considered defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). To allege a claim of defamation under Illinois law, a plaintiff must establish that: (1) "the defendant made a false statement concerning the plaintiff," (2) "there was an unprivileged publication of the defamatory statement to a third party by defendant," and (3) "the plaintiff was damaged." *Dubinsky v. United Airlines Master Executive Council*, 708 N.E.2d 441, 446-67 (Ill. App. Ct. 1999). An Illinois defamation action can either state a claim for defamation *per se*, which involves statements so harmful to one's reputation that damages are presumed, or for defamation *per quod*, which involves statements requiring extrinsic facts to show their defamatory meaning. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996).

In a defamation *per se* action, a plaintiff must allege statements or imputations that Illinois considers actionable *per se*, which include (1) commission of a criminal offense, (2) infection with a venereal disease, (3) "inability to perform or want of integrity in the discharge of duties of" public office, (4) "fornication or adultery," and (5) words that prejudice a party in "her trade, profession, or business." *Id.* at 1214-15. In an action for defamation *per quod*, a plaintiff must plead and prove special damages, which use extrinsic facts that show "actual damage to his reputation

6

and pecuniary loss resulting from the defamatory statement." *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 933 (N.D. Ill. 2000)(citing *Bryson*, 672 N.E.2d at 1214). The plaintiff in a *per quod* action must comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(g), which states that "[w]hen items of special damage are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

Giant Screen argues that the second amended complaint "details the specific false statements CIBC made, when those statements [were] made, who made them, and to whom." (Ans. 4). An allegation is considered "specific enough" if the statement permits the defendant to understand the specific nature of the claim and form a responsive pleading. *Wynne v. Stevenson*, 2002 WL 31804497, at *2 (N.D. Ill. 2002); *see, e.g., Cozzi v. Pepsi-Cola Gen. Bottlers Inc.*, 1997 WL 312048, at *5 (N.D. Ill. 1997)(stating that "courts in this district . . . have held that the defamatory language need not be quoted verbatim"); *see Muzikowski*, 322 F.3d at 926 (holding that the defendant's "claim for defamation *per se* d[id] not fall under the special pleading regime of Rule 9" and that the defendant was "entitled to the usual rules for notice pleading established by Rule 8"). Giant Screen's allegations in the second amended complaint meet such a standard. Each allegedly defamatory statement contained in the second amended complaint makes reference to attached exhibits, which include the allegedly defamatory statements. For example, Giant Screen's allegations in the second amended complaint reference a hardcopy memoranda sent to Export Development Canada ("EDC"), (Sec. A. Comp. Ex. R, T), an email

7

communication sent to EDC, (Sec. A. Comp. Ex. S, X, CC), an email communication sent to Fasken Martineau DuMoulin ("Fasken"), (Sec. A. Comp. Ex. W, AA, DD), and a hardcopy memoranda sent to Fasken, (Sec. A. Comp. Ex. BB, DD). Each of the statements contained in the referenced exhibits contains information that is "specific enough" to permit CIBC to understand the specific nature of the claims and form a responsive pleading. *Wynne*, 2002 WL 31804497, at *2.

Therefore, the allegations contained in the second amended complaint provide adequate notice of the defamation claims brought against CIBC, as well as the basis for the defamation claims and it is not necessary for Giant Screen to state precisely who said what to whom. *Id.*; *cf. Conley*, 355 U.S. at 47-48 (stating that "simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense. . . .").

### B. More Definite Statement

CIBC argues that Giant Screen's allegations of defamation are too vague for CIBC to form a responsive pleading. CIBC contends that "if the court does not dismiss the defamation claim, [the court] should, at the very least, require Giant Screen to plead a more definite statement of its defamation claim pursuant to Federal Rule of Civil Procedure 12(e) [("Rule 12(e)")]." (Mot. 5). Rule 12(e) provides the following:

8

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. . . .

Fed. R. Civ. P. 12(e). As noted above, the second amended complaint is neither so vague nor ambiguous that CIBC could not frame a responsive pleading. In addition, CIBC's reply brief supports the notion that such definitive statements were, in fact, set out in the second amended complaint, as CIBC was able to easily quote the statements and, as is explained below, argue newly introduced issues.

C.  Arguments Contained in Reply Brief

CIBC also argues for the first time in its reply brief that "CIBC's statements [alleged by Giant Screen] are not *per se* defamatory," (Reply 4), and that "Giant Screen has not plead [sic] defamation *per quod*." (Reply 8). A party may not introduce novel arguments in its reply brief. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997)(quoting *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996) for the proposition that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). In the instant action, CIBC contends that the arguments in its reply were simply responding to the arguments made by Giant Screen in its answer brief regarding the specific defamatory statements contained in the second amended complaint. However, CIBC goes far beyond the scope of any arguments presented in Giant Screen's answer

9

brief. There is no mention of defamation *per se* nor of defamation *per quod* in CIBC's motion to dismiss. Yet in CIBC's reply brief, CIBC allocates five pages of argument to these new issues, and allocates only one page of argument replying to Giant Screen's answer brief. (Reply 4-9). In addition, as noted above, the allegedly defamatory statements contained in the second amended complaint are neither so vague nor ambiguous that CIBC could not have framed a responsive pleading, rather than form arguments for the first time in its reply brief. CIBC's introduction of the new arguments in its reply brief was improper since it denied Giant Screen an adequate opportunity to respond to the argument and we strike sections I(2) and I(3) of CIBC's reply brief to CIBC's motion to dismiss. Therefore, because the allegations contained in the second amended complaint provide adequate notice of the defamation claims brought against CIBC, as well as the basis for the defamation claims, we deny CIBC's motion to dismiss Count VIII.

II. Tortious Interference with Prospective Business Relations Claim (Count IX)

CIBC moves to dismiss Giant Screen's tortious interference with prospective business relations claim contending that "Giant Screen has completely failed to allege that CIBC's purported tortious interference induced or caused a breach or termination of any business relationship." (Mot. 5). Under Illinois law, to state a cause of action for tortious interference with prospective business relations, a plaintiff must plead (1) "a reasonable expectation of entering into a valid business relationship," (2) that the defendant "knew of this expectancy," (3) that the defendant

"purposefully interfered to prevent the expectancy from being fulfilled," and (4) that damages to the plaintiff resulted. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). Giant Screen contends that it has pled all of the required elements of the tort.

CIBC argues that Giant Screen "has not plead [sic] anything sufficient [sic] meet the third element" because Giant Screen did not allege a "causal relationship between the alleged interfering conduct and the alleged damages. . . ." (Mot. 5). We disagree. Giant Screen alleges that it had a reasonable expectancy of entering into a valid business relationships "with governmental entities, theaters, and third-party vendors in the future," (Sec. A. Compl. Par. 174), and that CIBC was aware of this expectancy. Giant Screen also alleges that CIBC interfered with this expectancy "by making false statements to EDC about Giant Screen," (Sec. A. Compl. Par. 176), when "CIBC falsely told EDC that Giant Screen had defaulted on its seemingly undisputed contractual obligations and had conspired with Sky High Vikings and . . . Samson to mislead CIBC and EDC so that Sky High Vikings could obtain financing." (Sec. A. Compl. Par. 176). Finally, Giant Screen alleges that CIBC's actions resulted in damage to Giant Screen, "including loss of future business, threatened loss of existing business, loss of good will, harm to its good name and reputation in the large-format industry, and increased cost and effort in maintaining existing business relations in connection with producing and distribution of the Films and other large-format films generally." (Sec. A. Compl. Par. 177). Thus, Contrary to CIBC's contentions, Giant Screen is under no heightened obligation to plead further facts to support its claim. *Cook*, 141 F.3d at 328. Therefore, because Giant

Screen has sufficiently pled the facts of a tortious interference with prospective business relations claim against CIBC, we deny CIBC's motion to dismiss Count IX.

Additionally, we note that in ruling on a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of the pleadings rather than decides the merits of the claims. As the court has stated, we draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). In evaluating the sufficiency of the pleadings, the court cannot make factual inquiries. Arguments based on the merits of the case that ask this court to make factual inquires into the sufficiency of the evidence are more appropriate at the summary judgment stage.

## CONCLUSION

Based on the foregoing analysis, we deny CIBC's partial motion to dismiss Counts VIII and IX.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 27, 2007