**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GIANT SCREEN SPORTS LLC, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 05 C 7184** |
| | ) | |
| **SKY HIGH ENTERTAINMENT, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Giant Screen Sports LLC's ("Giant Screen Films") and Giant Screen Films Vikings LLC's ("Giant Screen Vikings") (collectively referred to as "Giant Screen") motion for summary judgment on all of Defendant Canadian Imperial Bank of Commerce's ("CIBC") counterclaims brought against Giant Screen. This matter is also before the court on CIBC's motion for summary judgment on Counts VIII and IX in the second amended complaint. For the reasons stated below, we grant Giant Screen's motion for summary judgment and we grant CIBC's motion for summary judgment. In addition, we dismiss Count XI of Giant Screen's second amended complaint as a matter of law.

# BACKGROUND

In October 2001, Defendant Sky High Entertainment ("Sky High") allegedly entered into a contract ("Films Contract") with Giant Screen Films under which Giant Screen Films was retained to distribute two films produced by Sky High entitled "Ultimate Gs" and "Adrenaline Rush" (collectively referred to as "Films"). According to Giant Screen, under the Films Contract, Giant Screen Films was to be the exclusive distributor of the Films. In November 2002, Sky High allegedly entered into a contract ("Vikings Contract") with Giant Screen Vikings under which Giant Screen Vikings was retained to distribute a film entitled "Vikings" ("Vikings Film").

Giant Screen contends that after the Vikings Contract was executed, Defendant Carl Samson ("Samson") falsified the terms of the Vikings Contract and forged a signature of a Giant Screen representative, Donald Kempf ("Kempf"), on the Vikings Contract so that Samson could obtain a loan from CIBC. According to Giant Screen, based upon the false information in the Vikings Contract, CIBC entered into a credit agreement ("Credit Agreement") under which it agreed to advance a loan to Sky High of approximately $2.7 million to finance the production of the Vikings Film. As part of the Credit Agreement, Sky High was allegedly required to enter into a Notice of Security, Direction of Payment and Distributor Acceptance ("Security Notice") and Giant Screen Films guaranteed Giant Screen Vikings' payment of $3 million to CIBC ("Guarantee"). In addition, as part of the Credit Agreement, Sky High entered into multi-party Pledgeholder Agreements

("Pledgeholder Agreements").  Giant Screen contends that Samson and Sky High failed to disclose the alterations to the terms of the Vikings Contract or the dealings between Sky High and CIBC.

CIBC alleges it agreed to extend financing to Sky High based on a number of agreements that were intended to limit the risk of CIBC's loan.  Those agreements included the Guarantee, an insurance policy provided by Export Development Canada ("EDC") that was to insure the Guarantee, tax credits from the Canadian government to subsidize the production of the film, certain personal guarantees, a film completion guarantee, and a security interest in all of Sky High's movable property.

Giant Screen contends that it has fulfilled its obligations under the Films Contract and Vikings Contract by securing leases for the Films and the Vikings Film. However, Giant Screen claims that Sky High has refused to pay the amounts owed to Giant Screen under the Films Contract and Vikings Contract.  Giant Screen also claims that in October 2004, CIBC contacted Giant Screen and demanded payments pursuant to the Security Notice and Giant Screen claims to have realized at that time the alleged fraud perpetrated by Samson and Sky High.  Giant Screen also claims that when CIBC requested funds from Giant Screen, CIBC made false statements about Giant Screen's breach of its contractual obligations under the Security Notice. According to Giant Screen, in April 2005, it received a letter from CIBC indicating that it had entered into a settlement with Sky High.

Giant Screen also claims that in the Spring of 2005, Sky High was promoting

a film entitled "Dinosaurs 3D" and that Sky High undermined Giant Screen's effort to distribute the Films by entering into various distribution agreements and linking promotion and distribution of the Films to "Dinosaurs 3D." Giant Screen contends that in the Summer of 2005, Sky High undermined Giant Screen's ability to distribute the Films by offering to distribute "Adrenaline Rush" for free to numerous theaters. Finally, Giant Screen alleges that Samson and Sky High told large-format theaters, post-production vendors, and others in the industry that Giant Screen was no longer distributing the Films, that the contracts were being terminated, and that the theaters and vendors should stop sending payments to Giant Screen and should cease communications with Giant Screen.

Giant Screen brought the instant action and includes in its second amended complaint a breach of contract claim against Sky High (Count I), a fraud claim against Sky High and Samson (Count II), a breach of the implied covenant of good faith and fair dealing claim against Sky High and Samson (Count III), an unjust enrichment claim against Sky High and Samson (Count IV), a quantum meruit claim against Sky High and Samson (Count V), a tortious interference with prospective business relations claim against Sky High and Samson (Count VI), a civil conspiracy claim against Sky High and Samson (Count VII), a defamation *per se* claim against CIBC (Count VIII), a tortious interference with prospective business relations ("TIPBR") claim against CIBC (Count IX), a declaratory judgment claim against Sky High and Samson (Count X), and a declaratory judgment claim against CIBC (Count XI). CIBC filed counterclaims and cross-claims and included a claim alleging

breach of contract against Giant Screen (Counterclaim I), a claim alleging tortious interference with contract ("TIC") against Giant Screen (Counterclaim II), breach of contract claim against Samson (Cross-Claim III), breach of warranty claim against Samson (Cross-Claim IV), fraudulent inducement claim against Samson (Cross-Claim V), fraudulent inducement of a settlement agreement claim against Samson (Cross-Claim VI).  CIBC moved for dismissal of Counts VIII and IX and on February 27, 2007, we denied CIBC's partial motion to dismiss.  In addition, on January 16, 2007, Giant Screen and CIBC filed motions for sanctions against Sky High and Samson.  On February 27, 2007, we granted in part and denied in part Giant Screen's motion for sanctions, granted in part and denied in part CIBC's motion for sanctions, and entered default judgment in favor of Giant Screen and CIBC against Samson and Sky High.  CIBC moves for summary judgment on Counts VIII and IX of the second amended complaint.  Giant Screen also moves for summary judgment on CIBC's counterclaims against Giant Screen.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I.  Giant Screen's Claims Against CIBC

CIBC moves for summary judgment on Giant Screen's defamation *per se* claim (Count VIII) and on Giant Screen's TIPBR claim (Count IX).

A.  Defamation *Per Se* Claim (Count VIII)

CIBC contends that the undisputed facts establish that CIBC's statements to EDC do not constitute defamation.  There are three allegedly defamatory statements in CIBC's communications with EDC.  The statements at issue are: (1) "CIBC is hereby notifying EDC that a Loss has been sustained, as defined in the Policy, as the result of the failure or refusal by [Giant Screen] to pay the first instalment [sic] of the Distribution Advance," ("Business Communication 1"), (D SJ App. 29); (2) "To CIBC's knowledge, [Giant Screen] is still in default of its payment obligations in relation to the initial instalment [sic] amount of US$500,000," ("Business Communication 2"), (D SJ App. 31); and (3) "CIBC is unaware of any disputes involving [Sky High] which would be impeding payment . . . and is not itself involved in any such dispute" ("Business Communication 3").  (D SJ App. 31). Giant Screen in its answer memorandum makes several broad allegations and general references regarding potential defamatory statements in the numerous communications between CIBC and EDC.  However, Giant Screen fails to cite to any portion of the extensive record that contains additional defamatory statements by CIBC and Giant Screen has failed to give this court any direction as to which facts are genuinely disputed.  *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)(stating that a court is not "obliged in our adversary system to scour the record looking for factual disputes").  Therefore, we will only consider the three allegations of defamatory statements identified by Giant Screen andd Giant Screen has waived its right to rely on any other allegations of defamation against CIBC in

the instant action.

CIBC argues that Business Communication 1 and Business Communication 3 are not defamatory *per se* and that Business Communication 2 and Business Communication 3 are also subject to innocent construction. Under Illinois law, a statement is considered defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). To establish a claim of defamation under Illinois law, a plaintiff must establish that: (1) "the defendant made a false statement concerning the plaintiff," (2) "there was an unprivileged publication of the defamatory statement to a third party by defendant," and (3) "the plaintiff was damaged." *Dubinsky v. United Airlines Master Executive Council*, 708 N.E.2d 441, 446-67 (Ill. App. Ct. 1999). An Illinois defamation action can either state a claim for defamation *per se*, which involves statements so harmful to one's reputation that damages are presumed, or for defamation *per quod*, which involves statements requiring extrinsic facts to show their defamatory meaning. *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996).

In a defamation *per se* action, a plaintiff must prove that the defendant made statements or imputations that Illinois considers actionable *per se*, which include (1) commission of a criminal offense, (2) infection with a venereal disease, (3) "inability to perform or want of integrity in the discharge of duties of" public office, (4) "fornication or adultery," and (5) words that prejudice a party in "her trade,

profession, or business." *Id.* at 1214-15. If the statement is considered defamatory *per se*, it is considered to be so harmful to the plaintiff that damages are presumed and need not be proven. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 726 (7th Cir. 2004). In addition, under Illinois law, a statement is not defamatory if it is "reasonably capable of an innocent construction." *Id.* (citing *Kolegas*, 607 N.E.2d at 206). Under the innocent construction rule, "'[a] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*.'" *Muzikowski v. Paramount Pictures Corp.*, 2007 WL 416983, at *5 (7th Cir. 2007)(quoting *Tuite v. Corbitt*, 2006 WL 3742112 (Ill. 2006)). In assessing the meaning of statements alleged to be defamatory, "'statements reasonably capable of an innocent construction should be interpreted as nondefamatory,'" but "'the innocent construction rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable.'" *Id.* (quoting *Tuite*, 2006 WL 3742112). Whether a statement is subject to an innocent construction is for a court to decide. *Kolegas*, 607 N.E.2d at 207. CIBC moves for summary judgment on Giant Screen's defamation claim (Count VIII).

1.  Business Communication 1

Giant Screen argues that Business Communication 1 constitutes defamation

*per se* since the statement "accuses Giant Screen of flatly ignoring its contractual commitments." (P Ans. D SJ 23). Taking the facts in the light most favorable to Giant Screen, Business Communication 1 is informing EDC of a potential claim that CIBC may be making in the future. The undisputed evidence further shows that a legitimate purpose existed for CIBC to contact EDC in relation to Business Communication 1 in the context of the business relationship between CIBC and EDC. In addition, Business Communication 1 does not state that Giant Screen breached a contract, only that there may be a reason for CIBC to make a claim to EDC in the future and that the claim is based on the fact that Giant Screen did not pay. CIBC was merely putting EDC on notice that such a claim may be filed, and the fact that a legitimate purpose may have existed as to the reason for Giant Screen's lack of payment is irrelevant. Finally, Giant Screen's contention that Business Communication 1 implied that Giant Screen was in breach of its contractual obligations is not actionable as defamation since such a supposition cannot be the basis for such a claim. *See Wilkow v. Forbes*, 241 F.3d 552, 555 (7th Cir. 2001)(stating that "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable")(quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). Therefore, based on the analysis above, no reasonable trier of fact could find other than that Business Communication 1 is not actionable as defamation since CIBC was merely informing EDC about a potential claim and we grant CIBC's motion for summary

judgment on Giant Screen's defamation *per se* claim (Count VIII) as it relates to Business Communication 1.

### 2. Business Communication 2

Giant Screen argues that Business Communication 2 constitutes defamation *per se* because CIBC knew or should have known that the statement was false. Taking the facts in the light most favorable to Giant Screen, Business Communication 2 is expressing CIBC's subjective opinion that, "[t]o CIBC's knowlegde," (D SJ App. 31), Giant Screen had not yet made the necessary payment that CIBC believed that Giant Screen was required to make. As noted above, the communication between CIBC and EDC was for a legitimate business purpose since CIBC was informing EDC of a potential policy claim. Further, the undisputed evidence shows that, based on Business Communication 2, EDC began an investigation as to the reasons that Giant Screen had yet to make the payment. Therefore, based on the analysis above, no reasonable trier of fact could find other than that Business Communication 2 is not actionable as defamation and we grant CIBC's motion for summary judgment on Giant Screen's defamation *per se* claim (Count VIII) as it relates to Business Communication 2.

### 3. Business Communication 3

Giant Screen argues that Business Communication 3 constitutes defamation *per se* because CIBC knew or should have known that the statement was false and

that it imputes Giant Screen's character. Taking the facts in the light most favorable

to Giant Screen, Business Communication 3 is expressing CIBC's subjective opinion

that CIBC was unaware of any such reason why a payment was not made, even if

such a reason existed. Such a statement is a legitimate business communication

between CIBC and EDC based on a potential claim by CIBC. In addition, as

articulated above, Giant Screen's contention that Business Communication 3 implied

that Giant Screen was in breach of its contractual obligations is not actionable as

defamation since such a supposition cannot be the basis for such a claim. *See*

*Wilkow*, 241 F.3d at 555 (stating that "if it is plain that the speaker is expressing a

subjective view, an interpretation, a theory, conjecture, or surmise, rather than

claiming to be in possession of objectively verifiable facts, the statement is not

actionable"). Therefore, based on the analysis above, no reasonable trier of fact

could find other than that Business Communication 3 is not actionable as defamation

and we grant CIBC's motion for summary judgment on Giant Screen's defamation

*per se* claim (Count VIII) as it relates to Business Communication 3.

Based on the foregoing analysis, no reasonable jury could find that the

statements made by CIBC to EDC constituted defamation *per se*. Therefore, we

grant CIBC's motion for summary judgment on Giant Screen's defamation *per se*

claim (Count VIII) in its entirety.


B. TIPBR Claim (Count IX)

CIBC also moves for summary judgment on Giant Screen's TIPBR claim

against CIBC. Under Illinois law, in order to prevail on a TIPBR claim, a plaintiff must show: "'(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir. 2006)(quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296 (Ill. 1996)). In addition, in order to survive summary judgment, a plaintiff must identify a specific third party with whom the plaintiff would have done business but for the interference of the defendant. *See Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005)(stating that "[a] plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed toward that third party"); *see, e.g., Republic Tobacco, L.P. v. N. Atl. Trading Co.*, 254 F. Supp 2d. 1007, 1012 (N.D. Ill. 2003)(granting summary judgment on tortious interference claim where the plaintiff "fail[ed] to provide evidence of any *specific* customers who terminated or altered their relationship with [the plaintiff] as a result of any conduct" by the defendant)(emphasis in original); *Celex Group, Inc. v. The Executive Gallery, Inc.*, 877 F. Supp. 1114, 1125 (N.D. Ill. 1995)(granting summary judgment where the plaintiff did not even "attempt[] to identify any specific third parties with whom it had a reasonable business expectancy" but rather relied on "past and present corporate executive customers" as an "identifiable class" and finding that during the

summary judgment stage that a plaintiff "must come forward with its evidence and identify particular third parties with whom it had a reasonable expectancy of entering into business").

CIBC argues that Giant Screen "cannot show any prospective relationships [Giant Screen] lost due to CIBC's statements to EDC." (D SJ Mem. 8-9). In Giant Screen's answer memorandum, Giant Screen contends that CIBC's actions created barriers in entering the Canadian market. Giant Screen further asserts that CIBC's actions forced it "to forego its plans to expand into the Canadian market." (P Ans. D SJ 30). Further, Giant Screen contends that it "was put in a position where it was forced to delay business opportunities," (P Ans. D SJ 30), and that "Giant Screen has lost revenue from existing and prospective business relations, lost value in goodwill, lost the value of its potential tax credits, and had its reputation and good name damaged." (P Ans. D SJ 31-32). However, such accusations are hardly enough to support the instant TIPBR claim.

The record does not support an interpretation other than that Giant Screen was merely in the negotiating stage with hopes of entering into the Canadian market or gaining future business. Such wishful thinking and lack of any specific expectation of entering into a valid business relationship is not sufficient to withstand summary judgment. *See Hoopla Sports & Entertainment v. Nike*, Inc., 947 F. Supp. 347, 358 (ND. Ill. 1996)(stating that "'[t]he hope of receiving an offer is not a reasonable expectancy'")(quoting *Vanden Dorpel*, 667 N.E.2d at 1299). In addition, the undisputed evidence shows that CIBC was not aware that any legitimate

14

communications between CIBC and EDC would reach a third party, which, in turn, could impact Giant Screen's business opportunities. Further, Giant Screen admits certain instances where its businesses opportunities were merely delayed, rather than lost. (P Ans. D SJ 30-32). In addition, Kempf stated during his deposition that he was not "aware of any business that in the past [Giant Screen has] lost because of [CIBC's statement to EDC]." (R D SOF 65); (P Ex 33, 301, l. 11-18). Thus, Giant Screen admits that it had no reasonable expectancy of entering into a valid business relationship with any potential consumers. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1; *see also Waldridge*, 24 F.3d at 920, 922 (stating that a court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions"); *Ammons*, 368 F.3d at 817 (stating "that a district court is entitled to expect strict compliance with Rule 56.1" and that "[s]ubstantial compliance is not strict compliance"). To allow a party's claim to survive summary judgment based on this evidence alone would allow liability "virtually without limit." *Celex Group*, 877 F. Supp. at 1125. Giant Screen also offers no additional evidence from which it may be inferred that Giant Screen suffered any damage from CIBC's actions and Giant Screen has also failed to provide any evidence of damages from losing any potential customers. *See Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003)(stating that "summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'")(quoting *Schacht v. Wisconsin Dep't of Corr.*,

175 F.3d 497, 504 (7th Cir. 1999)).  Finally, as we stated earlier, Giant Screen has

not pointed to specific evidence of wrongful conduct by CIBC with regard to the

statements made by CIBC to EDC.  *See American Broadcasting Co. v. Maljack*

*Prods., Inc.*, 34 F. Supp. 2d 665, 674 (N.D. Ill. 1998)(defining "wrongful" to include

"fraud, deceit, intimidation, or deliberate disparagement").  Therefore, based on the

above, no reasonable jury could find that Giant Screen had a reasonable expectancy

of entering into a valid business relationship or that Giant Screen was damaged by

CIBC's actions.  Therefore, we grant CIBC's motion for summary judgment on the

TIPBR claim (Count IX).


C.  Declaratory Judgment (Count XI)

Giant Screen seeks in its second amended complaint a declaratory judgment

from this court finding against CIBC, *inter alia*, that certain documents are invalid,

that Giant Screen does not owe money under the Vikings Contract, and that Giant

Screen does not have any other obligations under the Vikings Contract.  Pursuant to

the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, "any court of the United

States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further

relief is or could be sought."  28 U.S.C. § 2201.  Based on our analysis above, as

well as our February 27, 2007, memorandum opinion on the issue of sanctions, in as

much as Giant Screen is unable to prove the allegations in its declaratory judgment

claim brought against CIBC, we find as a matter of law that Giant Screen is not

entitled to a declaratory judgment and we dismiss Giant Screen's declaratory judgment claim brought against CIBC (Count XI).

## II.  CIBC's Counterclaims Against Giant Screen

Giant Screen argues that it is entitled to summary judgment as to CIBC's counterclaims.  As an initial matter, on March 13, 2007, this court denied CIBC's motion for leave to file additional counterclaims and granted CIBC's motion for leave to file additional affirmative defenses.  On May 14, 2007, we further granted CIBC's motion for leave to file a corrected answer to Giant Screens second amended complaint since CIBC neglected to include its original counterclaims in filing its answer to Giant Screen's second amended complaint.  As such, only the original counterclaims as pled by CIBC in its original answer, and no additional counterclaims, are viable claims before this court.  Those viable counterclaims, as brought against Giant Screen, include a breach of express contract claim and a tortious interference with contract claim.

### A.  Breach of Contract (Counterclaim I)

Giant Screen moves for summary judgment on CIBC's breach of contract counterclaim.  To establish a claim for breach of contract under Illinois law, a plaintiff must establish: "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to the plaintiff."  *Priebe v. Autobarn, Ltd.*, 240 F.3d 584,

587 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133 (Ill. App. Ct. 1990)); *see Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 986-87 (7th Cir. 1999)(noting that in a diversity case we apply federal procedural law and state substantive law)(citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). In the instant action, Giant Screen and CIBC disagree as to the existence of a valid and enforceable contract.

To establish the formation of a valid and enforceable contract under Illinois law, a plaintiff must establish that there was an "offer, acceptance and existence of valuable consideration." *Id*. In addition, a plaintiff must establish that there was "a meeting of the minds or mutual assent as to the terms of the contract," and "[t]he essential terms of a contract must be definite and certain in order for a contract to be enforceable." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987)(stating that "it is not necessary that the parties share the same subjective understanding as to the terms of the contract," that "'[i]t suffices that the conduct of the contracting parties indicates an agreement to the terms of the alleged contract,'" and that "a contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do'")(quoting in part *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977) and *Morey v. Hoffman*, 145 N.E.2d 644, 645-46 (Ill. 1957)); *see also Penzell v. Taylor*, 579 N.E.2d 956, 961 (Ill. App. Ct. 1991) (stating that "[w]hen the material terms and conditions are not ascertainable no enforceable contract is

created"). A contract can be formed under Illinois law expressly, orally, in writing, or can be implied. *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 907 (Ill. App. Ct. 1998). As noted above, only the issue of the existence of a valid and enforceable express contract is before this court.

Giant Screen argues that a valid and enforceable contract does not exist because there is no evidence that Kempf personally signed the Security Notice. The undisputed evidence in this case indicates that the signature found on the Security Notice was not that of Kempf, but instead that the signature was forged and CIBC admits that Kempf repeatedly testified that he did not personally sign the contract. (R P SOF Par. 31). In addition, pursuant to Local Rule 56.1, CIBC admits that Giant Screen's handwriting expert observed significant differences between Kempf's known signature and the signature that was found on the Security Notice. (R P SOF Par. 32). Also pursuant to Local Rule 56.1, CIBC admits that its Federal Rule of Civil Procedure 30(b)(6) witness is not able to verify that the signature on the Security Notice was not forged. (R P SOF Par .33-34). CIBC further admits that in 2005, CIBC submitted a pleading and sworn affidavit to a Canadian court that averred that CIBC had "every reason to fear that the [Security Notice] [was] false," and that CIBC's "disbursement of the loans" to Sky High and Samson were "obtained on the basis of false representations. . . ." (R P SOF Par. 35). Further, based on CIBC's representations to the court on March 13, 2007, CIBC admits that there is no evidence in dispute as to whether Kempf signed the Security Notice. (3/13/07 Hearing 4). CIBC cannot now speculate as to whether the Security Notice

19

signature was or was not forged simply to survive summary judgment and, as a matter of law, CIBC cannot sustain its breach of contract claim. Therefore, based on the analysis above, we grant Giant Screen's motion for summary judgment as to CIBC's breach of contract claim (Counterclaim I).

B.  TIC (Counterclaim II)

Giant Screen argues that CIBC's TIC counterclaim that is based on interference with the Vikings Contract is barred by judicial estoppel. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). Judicial estoppel is intended to prevent "perversion of the judicial process," and protect the courts from litigants attempting to play it "fast and loose" by intentionally using self-contradiction as a means to achieve an "unfair advantage in a forum designed for suitors seeking justice." *In re Cassidy*, 892 F.2d at 641; *see Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005)(stating that the doctrine of judicial estoppel acts "'to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment'")(citing *New Hampshire*, 532 U.S. at 749-50). The Seventh Circuit has held that "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'"

*In re Cassidy*, 892 F.2d at 641 (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

While there is no "precise or rigid formula" to guide in the application of judicial estoppel, it is relevant to consider whether (1) a party's position is "clearly inconsistent with a position earlier taken," (2) a party has prevailed "on the basis of its earlier position 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled,'" and (3) the asserting party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Jarrard*, 408 F.3d at 914-15 (quoting in part *New Hampshire*, 532 U.S. at 750). CIBC argues that the doctrine of judicial estoppel is not triggered in this case as the integrity of the court is allegedly not in danger.

In the instant action, Giant Screen claims that CIBC's TIC counterclaim is judicially estopped since CIBC has secured a judgment against Samson that directly contradicts the factual allegations underlying the alleged tortious interference at issue. In filing its counterclaims, CIBC chose to plead in the alternative by filing a cross-claim against Samson for fraudulent inducement of the settlement agreement (Cross-Claim VI) in addition to its TIC counterclaim against Giant Screen (Counterclaim II). In Cross-Claim VI, CIBC stated that "if the allegations set forth in paragraphs 35 through 56 of Giant Screen's Amended Complaint are found to be *true*, Mr. Carl Samson" fraudulently induced CIBC to enter into a settlement agreement. (D Ans. Compl. Par. 149)(emphasis added). In Counterclaim II, CIBC stated, in the alternative, that should "the allegations set forth in paragraphs 35

21

through 56 of the Amended Complaint [be] found [] *false*," Giant Screen tortiously interfered with the Vikings Contract. (D Ans. Compl. Par. 119)(emphasis added); (R P SOF Par. 29). CIBC then moved for, and was granted, default judgment on Cross-Claim VI. (2/17/07 Mem. Op.). CIBC admits that when this court entered default judgment against Samson and Sky High, "the well-pleaded allegations of [the] complaint were taken to be true." (R P SOF Par. 30). As such, the factual allegations concerning Sampson's fraud and forgeries set forth in paragraphs 35 through 56 were found to be true as applied to CIBC's counterclaim against Giant Screen. While CIBC is allowed to plead in the alternative, it may not now, after having secured a judgment, change its position as to the truth of such factual allegations because its interest has changed in this phase of the litigation. Therefore, as a matter of law, no reasonable jury could find other than that Giant Screen did not tortiously interfere with the Vikings Contract and we grant Giant Screen's motion for summary judgment as to CIBC's TIC counterclaim (Counterclaim II).

**CONCLUSION**

Based on the foregoing analysis, we grant Giant Screen's motion for summary judgment as to all of CIBC's counterclaims brought against Giant Screen and we grant CIBC's motion for summary judgment on Counts VIII and IX in the second amended complaint. In addition, we dismiss Count XI of Giant Screen's second amended complaint as a matter of law.


Samuel Der-Yeghiayan
United States District Court Judge


Dated: June 28, 2007